UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KAREN DAYANA M. R.,[1] | ) | Case No.: 1:25-cv-01992-SKO (HC) |
| Petitioner, | ) ) | ORDER GRANTING PETITION FOR WRIT OF |
| v. | ) ) | HABEAS CORPUS, DIRECTING RESPONDENT TO PROVIDE BOND HEARING, DIRECTING |
| | ) ) | RESPONDENTS TO FILE STATUS REPORT, AND DIRECTING CLERK OF COURT TO |
| CHRISTOPHER CHESTNUT, Warden, et al., | ) ) | ENTER JUDGMENT |
| Respondents. | ) ) ) ) | |

Petitioner Karen Dayana M. P. is a citizen of Colombia proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. 6, 9, 10.)

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

     Petitioner entered the United States without inspection in 2023. She was briefly detained and released on her own recognizance after officials determined that she was neither a danger nor a flight risk. On October 30, 2025, Immigration and Customs Enforcement ("ICE") agents re-detained Petitioner when she appeared for a scheduled check-in.

     On December 23, 2025, Petitioner filed a petition for writ of habeas corpus in which she sought her immediate release from detention. (Doc. 1.) She also filed a motion for temporary restraining order which was denied as untimely. (Docs. 3, 7.) On January 13, 2026, Respondents filed a response. (Doc. 11.) On January 14, 2026, Petitioner filed a reply. (Doc. 12.)

     For the reasons explained below, the Court will GRANT the petition.[2]

## I.    BACKGROUND

     Petitioner is a native and citizen of Colombia. (Doc. 1 at ¶ 2.) She entered the United States without inspection on March 28, 2023, seeking asylum. (Doc. 1 at ¶ 2.) She was briefly detained and placed in removal proceedings, but immigration officials released her on her own recognizance after determining she was not a flight risk or danger to the community. (Doc. 1 at ¶ 2; 11-1 at 8.)

     The regulations that authorize immigration authorities to release a noncitizen on her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the Government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

     On October 30, 2025, Petitioner was detained during a routine ICE visit. (Doc. 1 at ¶ 4.) She was informed that she had violated conditions of her parole by failing to properly download photos on

---

[2] Although the Response and Reply were made to the motion for preliminary injunction, the Court will rule on the petition directly as the Court finds the same merit to the petition as to the preliminary injunction. See Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); see also 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."); Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).

her phone. (Doc. 1 at ¶ 4.) Respondents cite to numerous violations of failed biometric check-ins. (Doc. 11-3 at 2.) On the other hand, Petitioner states she has complied with all obligations of supervision and ICE orders, she has never missed immigration court, and she filed her asylum application in March 2024. (Doc. 1 at ¶ 6.) Petitioner states she was detained without any notice, hearing, or on-the-record determination before a neutral arbiter. (Doc. 1 at ¶ 11.)

## II.     JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger.  (Doc. 1 at 11-12.)  Respondents contend Petitioner was detained due to violations of her conditions of release and was taken into custody pursuant to § 1225(b)(2)(A). (Doc. 11 at 5-6.) Respondents cite to ten violations of the conditions of the Alternatives to Detention/ISAP program. (Doc. 11 at 5.) Respondents claim 8 C.F.R. § 236.1(c)(9) permits revocation of release at any time upon the discretion of the officer in charge.

While the record shows that Petitioner may have violated the terms of her release by missing biometric check-ins, Petitioner states she was never informed of any of the ISAP violations cited by Respondents but cites no authority that she is entitled to any such warnings. (Doc. 12 at 9) (Petitioner, "believing that she was in compliance [with] all her conditions of release, voluntarily presented herself

to ICE.")  As noted by Petitioner, she was arrested while complying in presenting herself at an in-person check-in.

The Supreme Court has held that "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." See Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. Id. at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn.

Some courts have rejected the argument that "ICE [can] re-detain those released for purely technical violations, like being [] late to a check-in," without regard to whether that technical violation means that one is a flight risk or danger. Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025); see Espinoza v. Kaiser, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *12–14 (E.D. Cal. Sept. 5, 2025) (finding that petitioner who was re-detained after missing a check-in completely and failing to update ICE with a change of address had protected liberty interest which required post-deprivation bond hearing); J.A.E.M. v. Wofford, No. 1:25-CV-01380-KES-HBK, 2025 WL 3013377, at *5 (E.D Cal. Oct. 27, 2025) (same); Arzate v. Andrews, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), *converted to preliminary injunction sub nom*, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025) (Court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed).

In Martinez Hernandez v. Andrews, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), the Court ordered a post-detention bond hearing where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those

1  violations was "not obviously pretextual." Id. at * 12 ("If Respondent's view of the facts is correct, it is

2  at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been

3  impracticable and/or would have motivated her flight."). As the Court noted in Martinez Hernandez:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

Id. Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight.

Given the time Petitioner spent at liberty following the government's determination that she was not a flight risk or danger, as well as the government's implicit promise that any custody redetermination would be based on those same criteria, Petitioner has a protected "interest in remaining at liberty unless she no longer meets those criteria." Espinoza, 2025 WL 2581185, at *13 (quoting Pinchi v. Noem, 792 F.Supp.3d 1025, 1034 (N.D. Cal. 2025)). If Respondents believe that Petitioner's purportedly missed check-ins mean that she is a flight risk, they can make that argument at a future bond hearing.

Respondents also rely on an incorrect interpretation of § 1225(b)(2) —that Petitioner's recent re-detention is mandatory under section 1225(b)(2)(A) because Petitioner is considered an "applicant for admission." (Doc. 11 at 6.)  This interpretation has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between

5

sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025).

The record also shows that the Government treated Petitioner as subject to 8 U.S.C. § 1226(a), which does not mandate detention, after it released her in 2023. Petitioner was released on her own recognizance, which means that she was released pursuant to § 1226(a). See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Petitioner was not placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). Thus, Petitioner was released pursuant to § 1226(a), § 1225(b) is inapplicable, and Respondent's contention that her re-detention is now governed by § 1225(b)(2)(A) is untenable.

In summary, consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b)(2)(A), this Court concludes that section 1226(a), not section 1225(b)(2)(A), authorizes and dictates Respondents' authority to re-detain Petitioner.

The Court next turns to Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest,

"[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, her "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481–84.

The Immigration officials' 2023 release of Petitioner on her own recognizance pending her immigration proceedings was similar, in that it allowed her to live in the country subject to supervision, but out of custody, for the past 2 years. That time inherently allowed Petitioner to form "enduring attachments of normal life," including allowing her to live in the United States with her family and become gainfully employed. Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in her release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

### B. The Mathews Factors Demonstrate Petitioner is Entitled to a Post-Deprivation Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over 2 years, and during that time, she has lived with her family, worked, and developed ties to the community. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. No neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. No neutral arbiter has determined that circumstances had materially changed sufficiently to justify revocation of parole. Given the absence of any procedural safeguards to determine if her detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  Doe, 2025 WL 691664, at *6.  "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  Ortega, 415 F. Supp. 3d at 970. Nevertheless, the Government cites to numerous violations of ISAP conditions as grounds for re-detention. Petitioner contends she was never notified of these missed appointments, but she does not argue that they did not occur. She also concedes she was informed of these violations upon re-detention. (Doc. 1 at ¶ 4.) Thus, the Government's reasons for re-detention were not obviously pre-textual.

On balance, the Mathews factors show that Petitioner is entitled to a post-deprivation hearing pursuant to 8 U.S.C. § 1226(a).  And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's detention without providing her a hearing before a neutral arbiter in which the government must show by clear and convincing evidence that she is a flight risk or danger to the public is in violation of the Due Process Clause of the Fifth Amendment.

**IV.  CONCLUSION & ORDER**

Based on the foregoing, the Court concludes that Petitioner is entitled to a bond hearing before a neutral arbiter in which the Government must establish that Petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is GRANTED;

2) The motion for preliminary injunction is DISMISSED as moot;

3) Respondents are DIRECTED to provide Petitioner with a substantive bond hearing no later than seven (7) days from the date of this Order at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if she is released.

4) At such hearing, the Government SHALL bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner SHALL be allowed to have counsel present;

5) In the event a hearing is not timely provided, Respondents SHALL RELEASE Petitioner on conditions of supervision as they existed prior to her re-detention;

6) Within fourteen (14) days of the date of this Order, Respondents SHALL FILE a status report with the Court confirming that Petitioner has been provided a bond hearing or released; and

7) The Clerk of Court is directed to enter judgment. Once Respondents' status report confirming the hearing or Petitioner's release is received, the case will be closed.

IT IS SO ORDERED.

Dated:   **January 27, 2026**              /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE